43 So.2d 116

### JARRELL v. FARMERS NAT. BANK OF OPELIKA.

#### 4 Div. 539.

Supreme Court of Alabama.

Dec. 1, 1949.

120

A. L. Patterson and J. H. Caldwell, of Phenix City, for appellant.

Roy L. Smith, of Phenix City, and L. J. Tyner, of Opelika, for appellee.

FOSTER, Justice.

The question on this appeal is whether a court of equity properly exercised its power to correct an error in the description of land in some of the proceedings in which the land was sold by order of the probate court to pay debts of the decedent. The administration had been removed into equity before the effort was made to correct the error which occurred before the removal was ordered.

The tract of land in question consisted of 637 acres. It had been mortgaged to the Federal Land Bank, in which mortgage it was correctly described. The mortgage had been transferred to appellee bank. Thereafter to secure that debt and additional amounts another mortgage was made to the bank. The mortgage to the Federal Land Bank contained the description of NW 1/4; S 1/2 of NE 1/4; NE 1/4 of NE 1/4,,

section 18, Township 17, Range 28, and other land.

The mortgage made directly to appellee by the mortgagor, whose name was Lamb, contained all the same description as that of the Federal Land Bank, except that instead of the description copied above, it was NW ¼ of S ½ of NE ¼; NE ¼ of NE ¼, section 18, Township 17, Range 28. The mortgagor Lamb having died, the administrator petitioned the probate court for a sale of the land to pay debts, not mentioning the mortgage or any other specific debt to be paid. The land sought to be sold included that as described above as being in the Federal Land Bank mortgage, though using a different arrangement of the government numbers.

In due course the probate court made an order of sale in which the land as described in the petition was used, which description was correct. The notice of the sale contained the same correct description.

Before the date of sale the attorney for the administrator wrote the bank advising it of the proposed sale and that they may sell it subject to the mortgage, and asked for an exact description as set forth in the bank's mortgage and for the amount of the debt. The bank replied giving the amount of the debt and advising the attorney the book and page of the record of its mortgage. The attorney in a few days wrote the bank that, on the day before he had offered for sale the land "on which you hold a mortgage" subject to your mortgage, but received no bid and asked if the bank would like for him to show in the report by the administrator a bid from the bank in the amount of the mortgage debt, and enclosing a copy of the description of the land as same appears in the mortgage of record. That was the erroneous description contained in the mortgage executed by Lamb to the bank, of which error the bank did not then know. To this letter the bank answered offering to permit the report to show a bid for it in the total amount of the mortgage debt, and noted that the description which the attorney sent corresponded with that in the latter mortgage. The report of sale was then signed and sworn to by the adminis-

trator and filed May 12, 1945. It showed the bank as the purchaser at the named amount of its debt, but described it erroneously as set forth in the correspondence, so that instead of embracing the NW ¼; S ½ of NE ¼; NE ¼ of NE ¼, section 18, Township 17, Range 28, it described it as NW ¼ of S ½ of NE ¼; NE ¼ of NE ¼ of section 18, Township 17, Range 28.

The report also stated that the sale was conducted fairly and honestly and in strict accordance with the orders of the court and that the amount paid was not greatly less than the actual value.

On May 31, 1945, the probate court entered a decree ordering a confirmation of the sale and in that decree the land in question was described as erroneously set forth in the report of the sale, and also adjudging that the bank had bid the amount of its mortgage debt and being the highest and best bidder the same was "knocked off" to it for such sum and that the amount bid was not greatly less than the actual value of same and that the sale was fairly and honestly conducted and ordered a confirmation thereof, and that the administrator make a deed to said land to the bank as the purchaser. On the same day, to wit, May 31, 1945, the administrator of said estate executed and delivered to the bank a deed conveying said land, but containing the same erroneous description as set forth in the report of the sale and in the order of confirmation. This deed was duly recorded. The deed also recited that the amount of the bid as specified was the balance of the mortgage debt.

That status remained until the 30th day of August, 1945, on which day the petitioner as administrator of said estate filed a petition in the circuit court in equity in the county where the administration was pending, alleging that it was necessary to quiet the title to the land in question describing it as set forth in the report of the sale, alleging that the land was sold on the order of the court for the payment of the debts and was "knocked off" to the bank as the highest and best bidder and that the deed to the bank was ordered to be made containing said description and alleging

that petitioner desires that said description be construed and it be determined how many acres of land were conveyed by it and prayed that the administration be transferred to the court of equity and for general relief.

On September 6, 1945, the judge of the circuit court in equity having jurisdiction in that county made an order that said cause be then and there transferred from the probate court to the circuit court, in equity, of Russell County.

The bank thereupon filed an answer and cross-bill which was subsequently amended setting out a history of the transaction, as above stated, alleging that the description of the land in question contained in the mortgage from Lamb to it was erroneous, that after the words "NW ¼" it was intended that there be a semicolon instead of the word "of" which makes a material change in the amount of the land proposed to be included. That the attention of the bank was first called to such error upon the filing of the petition by the administrator for the removal of the cause and for what may be termed a declaratory judgment interpreting the proceedings of the probate court for the sale of said land, as we have outlined. The cross-bill prayed the court to make and enter a decree correcting the description contained in the proceedings, including the deed for the sale of said land, so that instead of being for the NW ¼ of S ½ of NE ¼, it be made to read NW ¼ and S ½ of NE ¼.

The cause came on for hearing before the judge of the circuit court, in equity, of Russell County, and was submitted on December 15, 1948, on an agreed statement of facts. Counsel for each party filing his note of testimony. The court on the 17th day of December, 1948, entered its final decree, the substance of which was to correct the description so as to make it describe the land as prayed for in the cross-bill, ratifying and confirming said sale and decreeing that the same vested title to the land in said bank on account of the sum bid and ordering a copy of the decree filed for record in the office of the judge of probate of Russell County as sufficient without further act on the part of the administrator

to correct the said error in the description. The administrator of the estate has appealed from that decree.

We do not think the situation calls for a discussion of the facts which we have outlined as sufficiently showing the occurrence of the error by mutual mistake, as set up in the cross-bill. There is no conflict whatever in the evidence and the result is reached from a proper analysis of the facts which were agreed on.

Attorney for appellee bank relies upon the power conferred by section 148, Title 13, Code, which is an old statute, to justify the relief which was granted. This, or some other statutory enactment, would probably be necessary to correct a misdescription of land in a judicial proceeding. Ganey v. Sikes, 84 Ala. 348, 4 So. 869; Goulding Fertilizer Co. v. Blanchard, 178 Ala. 298, 59 So. 485; Davenport v. Biddle, 223 Ala. 28, 134 So. 642. That section has been used as being authority for such correction to be made of an error in the description of land so occurring. Vaughan v. Hudson, 129 Ala. 176, 30 So. 75; Johnson v. Sandlin, 209 Ala. 430, 96 So. 223.

It will be noticed that section 148, supra, confers such power upon a court of equity not only because of the error but when lands were "sold for their full value, which has been fully paid to the party entitled to receive" it. We also observe that nowhere in the cross-bill in this cause or other pleading, or other matter of record, does it appear that the land was sold for its full value. The record shows that the land was sold for an amount not greatly less than its actual value.

■ If this were an original suit by the cross-complainant here seeking the relief upon allegations as made in the cross-bill without reference to the pendency of the administration of the estate and without being a feature of that administration or ancillary to it, and not a proceeding in which the court had not otherwise acquired jurisdiction, we doubt if the record in this case would show a proper compliance with section 148, supra. This for the reason that in the exercise of the jurisdiction under those circumstances and under authority

of section 148, supra, the court would be in the exercise of a special statutory and limited jurisdiction and the petition must affirmatively allege the jurisdictional facts in order to support a decree based upon that authority. Craig v. Root, 247 Ala. 479 (10–11), 25 So.2d 147; Cogburn v. Callier, 213 Ala. 46, 104 So. 330(6); Ex parte Griffith, 209 Ala. 158, 95 So. 551; Merchants National Bank of Mobile v. Morris, Ala. Sup., 42 So.2d 240.

If we were here confronted with the necessity to rely on section 148, supra, for the power of the court to correct the error in the description, it would be necessary to determine whether the petition or bill seeking that relief contained the allegation that the land sold for its full value is a condition to the exercise of such jurisdiction. We observe that the record does show that the amount of the bid was paid to the party entitled to receive it.

■ Reference is also made by appellee to support the power which was exercised by the court to section 273, Title 61, Code, which confers such right upon the probate court ordering a sale. This right under that authority was not sought to be exercised by the probate court, but it was exercised by the court of equity to which the cause had been removed under the authority of section 139, Title 13, Code. The probate court thereby lost its control. When such removal has been made section 138, Title 13, provides that in the administration of such estate in the circuit court, in the exercise of such jurisdiction, it may in its discretion proceed according to its own rules and practice without regard to any of the statutory requirements provided for administrations of estates in the probate court. Anderson v. Steiner, 217 Ala. 85, 115 So. 4.

Prior to the adoption of that statute the rule was that when the administration of an estate had been removed into the chancery court such court was required to pursue all of the statutory provisions applicable to the administration of estates in the probate court just the same as the probate court was so required to do. Dent v. Foy, 206 Ala. 454, 90 So. 317; Hardwick v. Hardwick, 164 Ala. 390, 51 So. 389; Roy v. Roy, 159 Ala. 555, 48 So. 793.

■■ The effect of the amendment is to confer upon the chancery court after the removal of the estate a discretion to proceed either according to the rules and practice of the chancery court or to follow the statutory requirements provided for administration of estates in the probate court. That legal status has the effect of conferring upon the chancery court such powers as were conferred by section 273, supra, upon the probate court. Authority for the distinction we are making between an independent suit in equity whose jurisdiction is dependent upon section 148, supra, and a situation where the court already has jurisdiction by reason of the pendency of the administration and by reason of the proceedings there begun by the administrator calling the attention of the court to the very matter in controversy is illustrated in the case of Cogburn v. Callier, 213 Ala. 46, 104 So. 330. This is upon the principle that there is a difference between such an original suit and an ancillary proceeding. Section 273, supra, is in the nature of an ancillary proceeding, whereas section 148, supra, contemplates an original suit standing upon its own specific statute to confer jurisdiction.

■■ It is not essential to an exercise of the power conferred by a statute to name it as the basis for the relief sought. If it is justified by law it may be sustained whether the correct statute is relied on or not.

■ But taking the whole matter and analyzing it, it is our view that ample authority was conferred upon the chancery court to exercise the power contained in section 273, supra, by a transfer of the administration of the estate into equity and upon the basis of that principle we sustain the jurisdiction of the court to render the decree which was rendered. We think it is perfectly clear there was a mutual mistake occurring which was properly corrected.

Affirmed.

BROWN, LAWSON, SIMPSON and STAKELY, JJ., concur.